# NO. 12-13-00248-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ALBERT DEMETRIC KENNEDY,* *APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Albert Demetric Kennedy appeals his conviction for possession of between one and four grams of cocaine, for which he was sentenced to ten years of deferred adjudication community supervision. In one issue, Appellant contends that the trial court erred when it denied his motion to suppress. We affirm.

## BACKGROUND

Appellant was parked at the rear entrance of a Whataburger restaurant at approximately 4:15 a.m. Officer Marshall Passons of the Athens Police Department drove his patrol vehicle behind Appellant's vehicle. Appellant then drove out of the Whataburger parking lot, and Officer Passons followed him. After observing Appellant weave and drift into the opposite lane of traffic, Officer Passons initiated a traffic stop. Appellant pulled to the side of a roadway for the stop, but the vehicle was blocking a portion of the roadway.

Officer Passons made contact with Appellant and requested his driver's license. Appellant had difficulty retrieving his license, but ultimately provided it to the officer. Appellant's cellular telephone subsequently rang, and Appellant had difficulty locating the phone. Officer Passons believed that Appellant was nervous and acting in a suspicious manner.

Officer Passons began to investigate whether Appellant was driving while intoxicated. He asked Appellant to perform standardized field sobriety tests, but Appellant claimed that he was unable to perform the tests because of injuries. Appellant asked for permission to urinate on the street, a request that Officer Passons denied. Appellant replied that he urinated in his pants. Officer Passons believed that Appellant was unfit to drive. Appellant became uncooperative, combative, and argumentative so, to help diffuse the situation and for his safety, Officer Passons placed him in handcuffs.

A dispatcher with the Athens Police Department then informed Officer Passons that Appellant was driving with a suspended driver's license. Officer Passons ceased his investigation of whether Appellant was driving while impaired and arrested Appellant for driving with a suspended driver's license.

Officer Passons requested a tow truck to impound Appellant's vehicle. He then requested Officer Justin Cook, also of the Athens Police Department, to conduct an inventory search of the vehicle.

Appellant had spoken with Danielle Kennedy, his wife,[1] after Officer Passons initiated the traffic stop. Just before Officer Passons transported Appellant to the police department and just after Officer Cook began the inventory search of Appellant's vehicle, Kennedy arrived at the scene. After Officer Cook's initial inventory search, he approached Kennedy to provide her the cash that had been found in the vehicle. Kennedy told Officer Cook that there should be more cash in the vehicle so Officer Cook searched the vehicle again. During his subsequent search of the vehicle, Officer Cook found crack cocaine.

Appellant was charged by indictment with possession of between one and four grams of cocaine. He filed a motion to suppress the evidence, which the trial court denied after an evidentiary hearing. Appellant then pleaded "guilty" to the offense charged. The trial court sentenced Appellant to ten years of deferred adjudication community supervision, and this appeal followed.

#### MOTION TO SUPPRESS

In his sole issue, Appellant argues that the trial court erred in denying his motion to suppress because (1) the police officer's inventory search of Appellant's vehicle was a pretext for

---

[1] Appellant identified Kennedy as his wife, but Kennedy later claimed that they were in a relationship when Appellant was arrested and married later.

an investigatory motive and (2) the impoundment of Appellant's vehicle was improper because another reasonable alternative to impoundment was available.

## Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Moreover, if, as here, the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports those factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When there is not an express finding on an issue, we infer implicit findings of fact that support the trial court's ruling as long as those findings are supported by the record. *See id*.

The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). In this vein, we review the trial court's legal conclusions de novo and uphold the ruling so long as it is supported by the record and correct under any legal theory applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Banda v. State*, 317 S.W.3d 907, 907-08 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

3

## Applicable Law

If conducted pursuant to a lawful impoundment, a police officer's inventory search of the contents of an automobile is permissible under both the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution. *See Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741, 93 L. Ed. 2d 739 (1987); *S. Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 3097, 49 L. Ed. 2d 1000 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980); *Moskey v. State*, 333 S.W.3d 696, 702 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Inventories serve to protect (1) the owner's property while it is in custody, (2) the police against claims or disputes over lost or stolen property, and (3) the police from potential danger. *Opperman*, 428 U.S. at 369, 96 S. Ct. at 3097. Inventory searches should be designed to produce an inventory, not turned into a purposeful and general means of discovering evidence of a crime. *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635, 109 L. Ed. 2d 1 (1990). Unless there has been a showing that the officer acted in bad faith or for the sole purpose of investigation, the officer may conduct an inventory search subsequent to a decision to impound a vehicle. *Bertine*, 479 U.S. at 372-73, 107 S. Ct. at 741-42.

The state bears the burden of proving that an impoundment is lawful and may satisfy its burden by showing that (1) the driver was arrested, (2) no alternatives other than impoundment were available to ensure the vehicle's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Garza v. State*, 137 S.W.3d 878, 882 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). There are two general categories of events justifying impoundment. *See Rodriquez v. State*, 641 S.W.2d 955, 958 (Tex. App.—Amarillo 1982, no writ). First, an officer may impound a vehicle when the vehicle is a danger to traffic. *See id*. Second, an officer may impound a vehicle after the arrest of the vehicle's driver when the vehicle cannot be protected by any means other than impoundment. *See id.*; *Greer v. State*, 436 S.W.3d 1, 7 (Tex. App.—Waco 2014, no pet.). An officer "need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist." *Greer*, 436 S.W.3d at 7.

## Discussion

Here, after Appellant was arrested, Officer Passons determined that impoundment of Appellant's vehicle was necessary because it was blocking a portion of the roadway and there was no one to move it. From the video admitted into evidence, it appears that the vehicle was parked

4

at the entrance to a residential subdivision. Consequently, it appears that if the vehicle was not moved, it would impede traffic that morning.

## 1. Pretext for an investigation

Appellant first argues that the inventory search was a pretext for an investigation and relies on two pieces of evidence as support. First, before Officer Passons arrested Appellant, he requested permission to search Appellant's vehicle. Appellant responded that there was nothing in his vehicle. Officer Passons again requested permission to search. Appellant again avoided directly answering the officer's request, but never consented to a search of his vehicle. Second, Officer Cook told Kennedy that she could not have the vehicle because he found drugs in it. Appellant contends this statement indicated that the vehicle was not going to be impounded, but would instead be released to Kennedy if Officer Cook's search proved fruitless.

However, there is evidence that Officer Cook conducted a legitimate inventory search rather than a search as part of an investigation. Officer Cook testified he was not aware that Officer Passons had requested consent to search Appellant's vehicle or that Appellant had declined to provide consent. Also, Officer Cook had conversations with Kennedy during the search. In fact, Officer Cook testified he had completed the inventory search of Appellant's vehicle and taken cash found in the vehicle to Kennedy. When she told him that there should be more cash in Appellant's vehicle, Officer Cook returned to the vehicle and searched it further. It was during this subsequent search that Officer Cook found the crack cocaine in Appellant's vehicle.

Officer Passons testified that Athens Police Department does not have written policy on when an officer may impound a vehicle. Rather, he testified, the department allows its officers to exercise discretion in determining whether to impound a vehicle. However, once the officers have decided to impound a vehicle, they must conduct an inventory search of the vehicle pursuant to Athens Police Department policies. In pertinent part, the policy on inventory searches states, "[S]earches of automobiles, prior to being impounded, are conducted as standard police procedures for the purpose of inventorying the contents to protect the owner's property and to protect the officer and/or Department against claims of lost, stolen, or damaged property." Officer Cook testified that he conducted the inventory search in accordance with the inventory policy and for the purpose stated in the policy.

The trial court made express findings that (1) under Athens Police Department policy, all impounded vehicles are inventoried, and (2) the inventory search of Appellant's vehicle complied with Athens Police Department policy. The evidence supports the trial court's findings. The evidence also supports the trial court's implied findings that Officer Cook's search was not conducted in bad faith and was not for the sole purpose of investigation. Accordingly, the trial court did not abuse its discretion when it concluded that Officer Cook's inventory search of Appellant's vehicle was proper and not a pretext for an investigatory motive.

## 2. **Improper impoundment**

Appellant further argues that the decision to impound the vehicle was improper because (1) Kennedy arrived at the scene before the inventory search was conducted, (2) Officer Passons knew that Kennedy was on her way to the scene, and (3) Kennedy's parents also arrived at the scene, so one of them could have driven Appellant's vehicle. However, Appellant's argument ignores two key facts.

First, Officer Passons made the decision to impound the vehicle before Kennedy arrived and at a time when no alternative to impoundment existed. Appellant is correct that Officer Passons anticipated Kennedy, who was in a relationship with Appellant, would arrive at the scene. But the evidence is equally clear that Officer Passons did not know how soon that would be. In a video recording of the traffic stop placed into evidence at the suppression hearing, Appellant claimed that his wife was on her way to get his vehicle. Officer Passons responded, "It is a little late."

Officer Passons's testimony at the suppression hearing was consistent with his response to Appellant as captured on the video recording. Specifically, in his testimony before the court, Officer Passons testified about impoundment after an arrest, stating, "[Another person] drive[s] it if someone is at the scene prior to arrest sometimes. We're not in the habit of calling people or waiting if we make an arrest to get somebody there. The vehicle is impounded."

Officer Passons's remarks to Appellant at the scene and to the court at the suppression hearing are consistent with his testimony that the officers did not know how quickly Kennedy would arrive at the scene. Appellant was arrested very early in the morning so it was reasonable for the officers to assume that Kennedy would not arrive for some time. Before Kennedy arrived at the scene, Officer Passons made the decision to impound the vehicle and called a wrecker to tow it away.

6

Second, according to Officer Cook's testimony, he did not remember Kennedy's parents being present at the scene and still felt as though no alternative to impoundment existed. As stated previously, Officer Cook conducted an inventory search of the vehicle. He did not begin the inventory search until after Appellant had been arrested and Officer Passons had made the decision to impound Appellant's vehicle. Appellant is correct that Kennedy arrived within a few minutes after Officer Cook began the inventory search. Officer Cook agreed that he was not prohibited from releasing the vehicle to Kennedy by Athens Police Department policies. When asked his reasons for not releasing the vehicle to Kennedy, Officer Cook gave two: (1) he needed permission from Officer Passons because Officer Passons was the arresting officer and (2) Kennedy arrived at the scene alone in her own vehicle and obviously could not drive two vehicles at once.

Kennedy claimed that her parents arrived at the scene, but her testimony to the court was not clear as to whether her parents arrived before or after Officer Cook found the crack cocaine. Specifically, Kennedy testified as follows:

> I stayed because I told the officer I was there to get the car and the other officer said they had – I believe they said they had to search the car again and asked me to step back to the car. And my dad and mom had [come] up like five minutes later.

Kennedy claimed she told Officer Cook that her mother or father was going to drive Appellant's vehicle if the vehicle was released to Kennedy. But that testimony was controverted by Officer Cook's failing to remember Kennedy's parents being present at the scene.

The trial court did not make an express finding that there was no alternative to impoundment of Appellant's vehicle during the entirety of Officer Cook's inventory search, but we imply such a finding in support of the trial court's determination that the impoundment was proper. Additionally, the trial court made the following express findings of fact and conclusions of law:

(1) Officer Passons was acting within his discretion and pursuant to Athens Police Department policy when he decided to impound Appellant's vehicle.
(2) Appellant's vehicle was partially parked on a public roadway and would obstruct the roadway if not impounded.

7

(3) When Officer Passons made the decision to impound Appellant's vehicle, Kennedy had not arrived at the scene of Appellant's arrest.

(4) Officer Passons was under no obligation to "un-impound" Appellant's vehicle if an option to impoundment became available after he made the initial decision to impound Appellant's vehicle.

(5) Officer Cook was under no obligation to disengage from an inventory search that was lawfully in progress if an alternative to impoundment of Appellant's vehicle later arose.

Based on our review of the record, we conclude that the evidence supports the trial court's findings that the officers properly impounded Appellant's vehicle. We specifically note that the evidence supports a determination that there was no alternative to impoundment of Appellant's vehicle at any time before Officer Cook discovered the crack cocaine. Accordingly, the trial court did not abuse its discretion when it determined that the impoundment of Appellant's vehicle was proper.

Having given due deference to the trial court's ruling, we hold that the trial court did not abuse its discretion in denying Appellant's motion to suppress. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered March 18, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 18, 2015**

**NO. 12-13-00248-CR**

**ALBERT DEMETRIC KENNEDY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. B-19,869)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*